UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SCOTT JOSEPH FITTS, | ) | CASE NO. 24-20240-jra |
| | ) | |
| *Debtor.* | ) | |
| | ) | |
| | ) | |
| XL FUNDING, LLC D/B/A AXLE FUNDING LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. _____ |
| | ) | |
| SCOTT JOSEPH FITTS, | ) | |
| | ) | |
| *Defendant*. | ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT PURSUANT TO 11 U.S.C. §§523(a)(2)(A), 523(a)(4), and 523(a)(6)**

Plaintiff in this action, XL Funding, LLC d/b/a Axle Funding LLC ("XLF"), by counsel, pursuant to the provisions of 11 U.S.C. §§ 523(a)(2)(A); 523(a)(4), and 523(a)(6); and Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure, requests that the Court determine certain obligations of Scott Joseph Fitts ("Debtor") to XLF to be nondischargeable. In support of its Complaint, XLF states as follows:

**I. PARTIES**

1. On February 19, 2024 (the "Petition Date"), Debtor filed in the United States Bankruptcy Court for the Northern District of Indiana, a Petition for Relief under Chapter 7 of the United States Bankruptcy Code, thereby creating Case No. 24-20240-jra.

2. Debtor listed his address in a written filing with this Court to be 945 Lake Street, Crown Point, Indiana 46307.

3. Debtor was represented in the filing of his Petition for Relief by Daniel L. Freeland, whose business mailing address is 9105 Indianapolis Boulevard, Highland, Indiana 46322.

4. XLF is an Indiana limited liability company doing business in Indiana and is a creditor of Debtor in the underlying bankruptcy case.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

6. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

7. Venue is proper under 28 U.S.C. § 1409(a).

8. The deadline to file a complaint to determine dischargeability of debts in this bankruptcy case is May 20, 2024. Therefore, XLF's complaint is timely filed.

## III. FACTUAL ALLEGATIONS

### A. THE DEMAND PROMISSORY NOTE AND SECURITY AGREEMENT

9. At all times relevant herein, Debtor was the co-owner of 231 Auto Exchange, Inc., a used motor vehicle dealership located at 5101 East State Road 231, Crown Point, Indiana 46307 (the "Dealer").[1]

10. On or about March 1, 2022, Dealer and XLF entered into a Demand Promissory Note and Security Agreement (the "Note"). A true and accurate copy of the Note is attached hereto and incorporated herein as Exhibit A.

11. On or about March 1, 2022, Plaintiff and Dealer executed a Term Sheet for the Agreement, a true and correct copy of which, as well as all schedules thereto, is attached hereto and incorporated by reference for all purposes as Exhibit B.

12. At all times relevant herein, Debtor controlled and was directly involved in the day-

---

[1] Debtor co-owned Dealer with Kevin Karraker ("Karraker"). Upon information and belief, Fitts and Karraker are, and have been, the sole co-owners of Dealer.

to-day business operations of Dealer until it ceased operations.

13. Under the terms of the Note, XLF granted Dealer a line of credit for the purpose of purchasing inventory for Dealer's used motor vehicle lot.

14. Pursuant to Section 2.3(e) of the Note, Dealer and, by extension, Debtor, were required to hold in trust any and all sales proceeds from the disposition of any Lender-Financed Inventory (as defined in the Agreement) for repayment to Plaintiff as follows:

> The Dealer shall pay all Obligations to XLF at the offices of XLF, on demand and without notice, with respect to Lender-Financed Inventory on the earliest of: (i) twenty-four (24) hours from the time Dealer receives payment by or on behalf of purchaser of an item of Lender-Financed Inventory; (ii) forty-eight (48) hours after the disposition by sale, lease, rent to own, lease to own, or otherwise of an item of Lender-Financed Inventory; (iii) the Maturity Date or (iv) upon demand by XLF.

15. Pursuant to Section 3 of the Note, Dealer granted to XLF a security interest in all of Dealer's collateral, including all Accounts, Deposit Accounts, General Intangibles, Documents, Instruments, Investment Property, Chattel Paper (including without limitation letters of credit, documents of title, books and records), Inventory (as defined in the Note), whether now existing or acquired and wherever located, Purchase Money Inventory, and all additions, accessions, accessories, replacements, and Proceeds, together with any and all books and records.[2]

16. XLF's security interest in the Collateral is perfected by virtue of a UCC-1 Financing Statement (the "Financing Statement") filed by XLF with the Indiana Secretary of State which was assigned file # 202203022901394. A true and accurate copy of the Financing Statement is attached hereto and incorporated herein as Exhibit C.

17. As a condition of extending credit to Dealer, XLF required Debtor to execute an Unlimited and Continuing Guaranty (collectively, the "Guaranty") in favor of XLF, whereby

---

[2] All capitalized terms are defined in Section 13 of the Note.

Debtor guaranteed prompt and full payment and performance to XLF of all obligations of Dealer pursuant to the Note. A true and correct copy of the Guaranty is attached hereto and incorporated herein as <u>Exhibit D.</u>

### **B. XLF VEHICLES SOLD OUT OF TRUST**

18. Between July 2022, and October 2022, XLF advanced funds to Dealer and to certain third parties on Dealer's behalf, at Debtor's request, for the purchase of vehicles for retail inventory as Collateral pursuant to the terms of the Note.

19. The funds advanced by XLF to Dealer and on Dealer's behalf were not repaid as agreed, and XLF declared the Note to be in default on or about March 15, 2023.

20. XLF has not recovered twenty-eight (28) of the vehicles which had outstanding balances as of March 1, 2024, and, upon information and belief, there are no vehicles remaining in Dealer's inventory. A list of the twenty (28) missing vehicles (the "SOT Vehicles"), including each vehicle's year, make, model, date floor planned with XLF, and the principal balance remaining on each vehicle, is attached hereto and incorporated herein as <u>Exhibit E</u>.

21. Upon information and belief, Dealer and Debtor sold or otherwise absconded with all twenty-eight (28) of the SOT Vehicles.

22. Debtor was aware that proceeds from the sale of the SOT Vehicles were required to be held in trust and paid to XLF.

23. Upon information and belief, Dealer and Debtor have received full payment from those who purchased the SOT Vehicles, or, in the alternative, never received funds from the sale or disposition of the SOT Vehicles, resulting in XLF being deprived of the Sales Proceeds from a legitimate sale. Instead, Dealer and Debtor embezzled the funds from the sale or other disposition

of the SOT Vehicles by misapplying the funds or failing to pay the funds to XLF pursuant to the terms of the Note.

24. Upon information and belief, Dealer and Debtor used the funds received from customers who purchased the SOT Vehicles to pay the Debtor or to pay third-parties on behalf of the Debtor.

25. Neither Dealer nor Debtor have paid the principal balances remaining on the SOT Vehicles to XLF.

## IV. BASIS FOR RELIEF

26. At the time of the Advances, Dealer and Debtor made representations or omissions of material fact to XLF regarding the financial condition of the Dealer and Debtor, as well as their ability to repay the Advances, with the intention and purpose of deceiving XLF.

27. XLF relied upon the representations or omissions of material fact made by Dealer and Debtor in making the Advances.

28. XLF's reliance on the representations or omissions of material fact made by Dealer and Debtor to XLF set forth above are reasonable and justified.

29. As a proximate result, XLF has, due to Dealer's and Debtor's representations and omissions of material fact, sustained loss and has been damaged.

30. As of the Petition Date, the remaining principal balance owed on the SOT Vehicles is Seven Hundred Ninety-Three Thousand, Nine Hundred Twenty-Two and 83/100 Dollars ($793,922.83).[3] Pursuant to Sections 2.3(e) and 7.6 of the Note (the "Trust Provisions"), all

---

[3] Dealer acquired ten (10) of the SOT Vehicles (Stock Nos. 70, 81, 87, 88, 89, 91, 92, 93, 94, 95, and 96, collectively, the "Chicagoland Vehicles") from Chicagoland. In reliance upon the Dealer and Chicagoland's representations, Plaintiff advanced the aggregate amount of $378,900.00 to Chicagoland on behalf of Dealer for the Dealer's purchase of the Chicagoland Vehicles. Contrary to the parties' agreement, Chicagoland failed to deliver the Certificates of Title for the Chicagoland Vehicles to Plaintiff, leading to Plaintiff filing suit against Chicagoland seeking reimbursement of the amounts advanced. As of the filing of this proceeding, Chicagoland has refunded the sum of $130,000.00 to Plaintiff.

amounts received from the sales of any item of Lender-Financed Inventory ("Sale Proceeds") were required to be held in trust for the sole benefit of XLF and were to be remitted promptly to XLF within twenty-four (24) hours of Dealer's receipt of the Sales Proceeds.

31. The Trust Provisions of the Note created an express trust for the benefit of XLF, with a clearly identifiable trust res comprised of Sale Proceeds.

32. Debtor actively participated in the day-to-day operations of Dealer, including sales, inventory control, accounts receivable, and accounts payable.

33. Debtor and Karraker were the only individuals at Dealer who had the ability to comply with the Trust Provisions of the Note, or to breach the Trust Provisions by failing to hold Sale Proceeds in trust for XLF.

34. Debtor therefore stood in a fiduciary relationship to XLF.

35. Debtor was aware of the terms of Dealer's secured line of credit with XLF, as those terms were spelled out in the Note, which Debtor executed in his capacity as owner of the Dealer.

36. Debtor had a fiduciary duty to hold the Sale Proceeds in trust for the benefit of XLF and to remit the Sale Proceeds to XLF within twenty-four (24) hours of receipt.

37. Debtor breached his fiduciary duty by intentionally failing to deliver the Sale Proceeds of the SOT Vehicles to XLF, instead converting those Sale Proceeds for other purposes.

38. Debtor intended to harm XLF by selling, transferring, ill-treating, wasting, or otherwise disposing of the SOT Vehicles and not paying the Sales Proceeds to XLF.

39. The sale, transfer, ill-treating, wasting, or other disposition of the SOT Vehicles was a wrongful act committed by Debtor and Dealer which Debtor and Dealer knew, or believe, would substantially injure XLF should the SOT Vehicles be sold, transferred, or otherwise disposed of without paying XLF.

40. The sale, transfer, ill-treating, wasting, or other disposition of the SOT Vehicles and subsequent failure to pay XLF the Sales Proceeds was done by Dealer and Debtor intentionally.

41. The sale, transfer, ill-treating, wasting, or other disposition of the SOT Vehicles and subsequent failure to pay XLF the Sales Proceeds necessarily caused injury to XLF.

42. The sale, transfer, ill-treating, wasting, or other disposition of the SOT Vehicles and subsequent failure to pay XLF the Sales Proceeds was done by Dealer and Debtor without just cause or excuse.

43. Dealer and Debtor's wrongful withholding of the Sales Proceeds from the sale of the SOT Vehicles constitutes embezzlement.

44. Dealer and Debtor's conversion of the Sales Proceeds from the sale of the SOT Vehicles constitutes embezzlement.

45. Dealer and Debtor, if they were not paid or not paid in full for the sale or other disposition of the SOT Vehicles, have converted the SOT Vehicles in an effort to defraud XLF of its collateral in the form of the SOT Vehicles or the Sales Proceeds thereof.

46. At all times relevant herein, Debtor controlled the day-to-day business operations of Dealer.

47. XLF held a valid and perfected security interest in the SOT Vehicles and any Sale Proceeds therefrom.

48. At the time Dealer received the Sale Proceeds from the SOT Vehicles, Debtor knew that Dealer was in financial distress.

49. Debtor controlled the finances of Dealer and had ultimate authority and responsibility for issuing payments to Dealer's creditors.

50. Debtor solely, willfully and intentionally determined how the Sale Proceeds from the SOT Vehicles would be used.

51. Debtor failed to pay the Sale Proceeds from the SOT Vehicles to XLF.

52. Debtor's failure to pay the Sale Proceeds to XLF was deliberate.

53. Debtor knew or should have known that his failure to pay the Sale Proceeds to XLF was substantially certain to cause harm to XLF, as neither Dealer nor Debtor had any alternative source to repay XLF for the converted Sale Proceeds.

54. Debtor knew or should have known that his failure to pay the Sale Proceeds to XLF was contrary to commonly accepted duties in the ordinary relationships among floor plan financers and floor plan borrowers.

55. Debtor, through the conduct described above, willfully and maliciously injured XLF, resulting in actual damages to XLF of not less than Seven Hundred Ninety-Three Thousand, Nine Hundred Twenty-Two and 83/100 Dollars ($793,922.83), exclusive of the interest and fees XLF could have earned on that amount had it been lent to a different dealer.

56. Pursuant to the Note, XLF is entitled to attorney fees, costs, and expenses incurred in collecting and enforcing the obligations under the Note, including the fees and expenses incurred in this proceeding.

57. XLF has been required to hire an attorney to collect and enforce the obligations under the Note and to commence and pursue this proceeding.

58. XLF has incurred attorney fees, costs, and expenses collecting and enforcing the obligations under the Note, including the fees and expenses incurred in this proceeding.

### COUNT I: 11 U.S.C § 523(a)(2)(A): FALSE PRETENSES, FALSE REPRESENTATIONS, OR ACTUAL FRAUD

59. XLF repeats, realleges, and incorporates by reference paragraphs 1 through 59 as if fully set forth herein.

60. The debt, including attorney's fees, costs, and expenses, arising from the money, property, and/or extension of credit Dealer and Debtor obtained from XLF by false pretenses, false representations, and/or actual fraud related to the SOT Vehicles is a nondischargeable debt of Debtor pursuant to 11 U.S.C. §523(a)(2)(A).

WHEREFORE, XLF prays for (a) a determination that the debt, including attorney fees, costs, and expenses, arising from the money, property, and/or extension of credit Debtor obtained from XLF by false pretenses, false representations, and/or actual fraud related to the SOT Vehicles is nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A) and (b) for all other proper relief.

### COUNT II – 11 U.S.C. §523(A)(4): FRAUD OR DEFALCATION IN A FIDUCIARY CAPACITY, EMBEZZLEMENT, OR LARCENY

61. XLF repeats, realleges, and incorporates by reference paragraphs 1 through 59 as if fully set forth herein.

62. The debt, including attorney fees, costs, and expenses, rising from Debtor's fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny arising from Debtor's failure to pay the Sales Proceeds from the sale or other disposition of the SOT Vehicles is a nondischargeable debt of Debtor pursuant to 11 U.S.C. § 523(a)(4).

63. The debt, including attorney fees, costs, and expenses, rising from Debtor's fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny arising from Debtor's sale or other disposition of the SOT Vehicles without receiving or paying the Sales Proceeds to

XLF as required by the Note is a nondischargeable debt of Debtor pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, XLF prays for (a) a determination that the debt, including attorney's fees, costs, and expenses, arising from Debtor's failure to pay the Sales Proceeds realized from the sale or other disposition of the SOT Vehicles is a nondischargeable debt of Debtor pursuant to 11 U.S.C. § 523 (a)(4); (b) a determination that the debt, including attorney's fees, costs, and expenses, arising from the Debtor's sale or other disposition of the SOT Vehicles without paying the Sales Proceeds to XLF is a nondischargeable debt of Debtor pursuant to 11 U.S.C. § 523(a)(4); and (c) all other proper relief.

### COUNT III – 11 U.S.C. § 523(A)(6): WILLFUL AND MALICIOUS INJURY

64. XLF repeats, realleges, and incorporates by reference the allegations of paragraphs 1 through 59 as if the same were set forth verbatim herein.

65. The debt, including attorney fees, costs, and expenses, arising from the willful and malicious injury to the Sales Proceeds and XLF's interest therein is a nondischargeable debt of Debtor pursuant to 11 U.S.C. § 523(a)(6).

66. The debt, including attorney's fees, costs, and expenses, arising from the willful and malicious injury to the SOT Vehicles and XLF's interest therein is a nondischargeable debt of Debtor pursuant to 11 U.S.C. §523(a)(6).

WHEREFORE, XLF prays for (a) a determination that the debt, including attorney's fees, costs, and expenses, arising from the willful and malicious injury to the Sales Proceeds and XLF's interest therein is a nondischargeable debt of Debtor pursuant to 11 U.S.C. § 523(a)(6); (b) a determination that the debt, including attorney's fees, costs, and expenses, arising from the willful

and malicious injury to the SOT Vehicles and XLF's interest therein is a nondischargeable debt of Debtor pursuant to 11 U.S.C. §523(a)(6); and (c) for all other proper relief.

DATED this 26th day of March, 2024     Respectfully Submitted,

BLACKWELL, BURKE & FOWLER, P.C.

*/s/ Jason R. Burke*
Jason R. Burke, Atty. No. 19727-49
Sarah L. Fowler, Atty. No. 30621-49
Blackwell, Burke & Fowler, P.C.
101 W. Ohio St., Suite 1700
Indianapolis, IN 46204
Phone: (317) 635-5005
Email:  jburke@bbrlawpc.com
      sfowler@bbrlawpc.com

ATTORNEYS FOR PLAINTIFF
XL FUNDING, LLC
D/B/A AXLE FUNDING LLC